JOHN NEUKOM (SBN 275887)
john.neukom@skadden.com
PATRICK HAMMON (255047)
patrick.hammon@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

Attorney for Plaintiff
TELEGRAM MESSENGER INC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TELEGRAM MESSENGER INC, <br><br> Plaintiff, <br><br> vs. <br><br> LANTAH, LLC, <br><br> Defendant. | CASE NO. 18-cv-2811 <br><br> **PLAINTIFF TELEGRAM MESSENGER INC'S COMPLAINT FOR:** <br><br> 1. **FALSE DESIGNATION OF ORIGIN;** <br> 2. **TRADEMARK INFRINGEMENT; AND** <br> 3. **UNFAIR COMPETITION** <br><br> **JURY TRIAL DEMANDED** |

COMPLAINT                                                                 18-cv-2811

Plaintiff Telegram Messenger Inc ("Telegram Messenger") by its attorneys, for its Complaint against Defendant Lantah LLC ("Defendant" or "Lantah"), upon personal knowledge as to its own facts and conduct and on information and belief as to all other matters, states and alleges as follows:

**INTRODUCTION**

1. This is an action alleging false designation of origin under 15 U.S.C. § 1125, common law trademark infringement, and unfair competition under Cal. Bus. & Prof. Code § 17200.

2. This action concerns service mark rights used in connection with cryptocurrencies, digital assets designed to work as a medium of exchange that use cryptography to secure transactions, control the creation of additional units, and verify the transfer of assets.

3. Cryptocurrencies allow users to transact business from anywhere in the world with an internet connection, without requiring a centralized third party such as a bank or government to verify or clear transactions.

4. Telegram Messenger, including with affiliated companies (collectively, "Telegram") previously adopted the service mark GRAM, and has used that mark in connection with financial products and services it intends to offer to customers, namely providing a cryptocurrency (or virtual currency) for use by members of the Telegram Open Network ("TON"), which network Telegram is working to launch in the fourth quarter of 2018.

5. As a consequence of its extensive activities in commerce in support of its cryptocurrency and TON, including successfully executing purchase agreements for GRAMs (the "Purchase Agreements"), Telegram has established service mark rights in the mark GRAM for financial products and services relating to cryptocurrency. The named plaintiff Telegram Messenger is the owner and/or assignee of all rights to the GRAM mark, and other companies affiliated with Telegram Messenger (such as Telegram Messenger's parent corporation, Telegram Group Inc.) use the GRAM mark with the permission of Telegram Messenger.

6. Defendant Lantah has indicated in a recent governmental filing that it intends to use the mark GRAM at some point in the future for a virtual currency for use by members of an on-

line community it apparently wants to create.

7. While Lantah has recently indicated that it intends to use the GRAM mark at some point in the future in relation to cryptocurrency, Telegram has already been doing so in the past, in commerce, with substantial success, and with priority over Lantah. Telegram Messenger thus has prior rights in the mark GRAM as used in connection with cryptocurrency and related financial products and services, and brings this lawsuit seeking preliminary and permanent injunctive relief to ensure that Lantah does not deceive or confuse consumers, or potential consumers, or otherwise cause harm to Telegram.

8. If Lantah's infringing activities are not enjoined, such actions will cause significant confusion among consumers and cause significant harm to Telegram.

## PARTIES

9. Plaintiff Telegram Messenger Inc is an entity organized under the laws of the British Virgin Islands with registered offices at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG 1110 and is a wholly owned subsidiary of Telegram Group Inc. Telegram Group Inc. is an entity organized under the laws of the British Virgin Islands with its registered office at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG 1110.

10. Defendant Lantah is a limited liability company organized under the laws of Florida, maintaining its principal place of business at 7010 Potomac Drive, Port Richey, Florida 34668.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the Lanham Act claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has subject matter jurisdiction over the related state law claims raised in this action pursuant to 28 U.S.C. §§ 1338(b) and 1367.

12. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(b), as this dispute is between a party (Lantah) incorporated and having its principal place of business in Florida and a subject (Telegram Messenger) of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

1    13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) and/or (3). As to § 1391(b)(1), this is a District "in which any defendant [Lantah] resides" and "all defendants [Lantah] are residents of the State in which the district is located." That is the case because Lantah is subject to this Court's personal jurisdiction with respect to this action. *See* 28 U.S.C. § 1391(c)(2).

14.    As to § 1391(b)(2), a "substantial part of the events . . . giving rise to the claim[s] occurred" in this District given that, *inter alia*, Telegram has successfully executed numerous Purchase Agreements with purchasers in this District using the GRAM service mark, establishing Telegram Messenger's priority in the mark, and Lantah's recent trademark filing (claiming an intent to use the mark) would undermine and damage Telegram Messenger's mark, including by giving rise to confusion among consumers (including those purchasers in this District with whom Telegram has successfully executed Purchase Agreements using the GRAM mark).

15.    Personal jurisdiction is proper for numerous reasons. First, Lantah has been attempting and/or is planning to transact business in the State of California, has engaged in or plans to engage in tortious acts within the State of California, and has other contacts with the State of California, as evidenced by Lantah's recent actions to register the mark. Second, Lantah has unlawfully claimed Telegram Messenger's service mark while knowing (actually or constructively) that Telegram has been using the mark to successfully execute Purchase Agreements with purchasers inside California. (By way of example, publicly available news reports published before Lantah's trademark registration filing disclosed that Telegram executed Purchase Agreements with notable venture capital firms located in Silicon Valley.) Third, Lantah's improper use of Telegram Messenger's mark is likely to confuse consumers located inside this District, which is especially important given that Telegram has already executed Purchase Agreements using the GRAM service mark with purchasers located in this District.

## BACKGROUND FACTS

### History of Telegram

16.    The "Telegram Group" was founded in 2013 with the primary mission of developing online products and services using encrypted technology.

17. Telegram's first project was a messaging application with a particular focus on speed and security ("Telegram Messenger App").

18. Within a few months after its launch, the Telegram Messenger App had attracted millions of users, and received positive reviews from both users and the press.

19. In early 2018, the Telegram Messenger App had 200 million monthly users worldwide, with 500,000 new users joining daily, and was delivering 70 billion messages every day.

**The Telegram Open Network and the Gram Cryptocurrency**

20. The architecture of existing "general distributed ledgers," also known as "blockchains," that support the development and exchange of most cryptocurrencies today presents a number of limitations that prevent these cryptocurrencies from gaining widespread use and adoption.

21. Most significantly, such blockchains are not fully scalable, resulting in slow transaction speeds as the network grows. This means that cryptocurrencies built on such networks cannot realistically be used as a medium of exchange in lieu of fiat currencies or credit cards.

22. As a result, the current market of goods and services that can be purchased using cryptocurrencies is limited.

23. The user interfaces associated with existing blockchain networks and cryptocurrencies also tend to be confusing or overwhelming for the average consumer.

24. Most cryptocurrencies also need to develop a large network of users to be viable.

25. Telegram's core development team recognized these limitations, and given its strong experience in cryptography and distributed computing, embarked in 2017 to develop the Telegram Open Network ("TON"), a new blockchain that will be fully scalable, and able to support a robust cryptocurrency.

26. The over 200 million member Telegram Messenger App user base would also facilitate the network effect that is important for the adoption of a new cryptocurrency.

27. In developing TON, Telegram recognized that it could take advantage of the significant goodwill in its existing brand, and large customer base, to create a widely adopted

-4-

blockchain network and cryptocurrency.

**TON Purchase Agreements**

28. Telegram is, in part, funding the development and creation of TON through the offering of Purchase Agreements to certain individuals and entities, including those in the United States and those specifically in this District.

29. Although GRAMs will not be released to purchasers until such time that the development team determines that TON is ready to be launched, purchasers will receive a set amount of GRAMs (determined based on a pricing formula) from TON Issuer Inc. (a wholly owned subsidiary of Telegram Group Inc.) when the GRAMs are released, subject to satisfaction of the conditions set forth in their respective Purchase Agreements with Telegram and TON Issuer Inc.

30. Throughout December 2017, Telegram's offering of Purchase Agreements was widely reported on by many financial and industry publications.  Attached hereto as **Exhibit A** are examples of such articles, including:

  (a) a December 22, 2017, article from cryptocurrency publication *Cointelegraph*;

  (b) a December 22, 2017, article in the *International Business Times News*; and

  (c) a December 27, 2017, article from ICO publication *ICO Watch List*.

31. On or around January 29, 2018, the first Purchase Agreement was executed by Telegram and TON Issuer Inc.

32. By February 25, 2018, Telegram had executed Purchase Agreements with 35 purchasers in the U.S., including 30 California-based purchasers, many of whom are based inside this District.

33. As a consequence of Telegram's widely reported on and highly successful offering of Purchase Agreements, it has used the mark GRAM in interstate commerce in the United States, and in this District, and has established common law service mark rights in the mark GRAM in connection with the offering of virtual currency to be used with TON.

34. Not only has it been widely reported since late 2017 that Telegram's offering of Purchase Agreements (using the GRAM mark) has been successful, it has also been the case that it has been widely reported that such successful offering has included executing Purchase Agreements with purchasers located inside the Northern District of California. For example, by February 21, 2018, it was being reported publicly that Telegram had executed Purchase Agreements with Sequoia Capital and Benchmark, both headquartered here in this District.

### Defendant's Infringing and Unfair Conduct

35. After it was publicly reported that Telegram's offering of Purchase Agreements to Silicon Valley investors had been successful, namely on or about February 25, 2018, Lantah filed an intent to use trademark application (Application No. 87/810,181) at the U.S. Patent and Trademark office covering the mark GRAM for "financial services, namely, providing a virtual currency for use by members of an on-line community via a global computer network" (the "ITU Application"). A copy of the ITU Application is attached hereto as **Exhibit B**.

36. On or about March 9, 2018, Lantah initiated a so-called initial coin offering ("ICO") using the mark "gram."

37. Both the filing of the ITU Application and the initiation of Lantah's ICO post-date Telegram's date of first use of its GRAM service mark in interstate commerce and Telegram Messenger's rights in the GRAM mark accordingly predate those of Lantah.

38. Lantah's use of "gram" for a cryptocurrency will inevitably cause a likelihood of consumer confusion, harm the goodwill in Telegram's service mark, and cause confusion as to the source, origin, and/or sponsorship of Telegram's cryptocurrency services.

39. Because of the nature of cryptocurrencies, Lantah's use of "gram" will further cause confusion among consumers as to which cryptocurrency is being used in any particular transaction, thereby causing harm to consumers and to Telegram.

### FIRST CLAIM

### (False Designation of Origin Under 15 U.S.C. § 1125)

40. Telegram Messenger incorporates by reference the allegations in the preceding paragraphs of the Complaint.

1   41.   By virtue of having used and continuing to use the GRAM mark in commerce, including in California, Telegram Messenger has acquired common law trademark rights in the GRAM mark.

42.   Lantah has used and continues to use a service mark that is confusingly similar to Telegram's GRAM mark without Telegram Messenger's consent.

43.   Lantah's unauthorized use in commerce of a service mark that is confusingly similar to Telegram Messenger's GRAM mark has caused and is likely to continue to cause confusion or mistake, or to deceive consumers and potential consumers, the public, and the trade concerning an affiliation, connection, or association between Lantah and Telegram when there is no such affiliation, connection, or association.

44.   Lantah's activities, alleged herein, have a substantial economic effect on interstate commerce.

45.   Lantah's activities, alleged herein, constitute false designation of origin within the meaning of 15 U.S.C. § 1125(a).

46.   Telegram Messenger has been irreparably injured by Lantah's false and misleading conduct in violation of 15 U.S.C. § 1125(a).

47.   Lantah acted willfully, with knowledge of Telegram Messenger's rights in the GRAM mark, and those acts constitute a willful violation of the Lanham Act.

48.   As a result of this false designation of origin, Telegram Messenger has suffered irreparable injury and, unless Lantah's infringement is enjoined by the Court, Telegram Messenger will continue to suffer irreparable harm.  There is no adequate remedy at law for the harm caused by Lantah's infringing conduct.

### SECOND CLAIM
### (Common Law Trademark Infringement)

49.   Telegram Messenger incorporates by reference the allegations in the preceding paragraphs of the Complaint.

50.   By virtue of having used and continuing to use the GRAM mark in commerce, including in California, Telegram Messenger has acquired common law trademark rights in the

GRAM mark.

51. Lantah's stated intent to use and use of a mark that is confusingly similar to the GRAM mark infringes Telegram Messenger's common law trademark rights in the GRAM mark and is likely to cause confusion, mistake, or deception among consumers, who will believe that Lantah's services originate from, or are affiliated with, or are endorsed by Telegram, including Telegram Messenger, when, in fact, they are not.

52. By virtue of acts complained of herein, Lantah has intentionally caused a likelihood of confusion among the public and has unfairly competed with Telegram Messenger in violation of the common law of the State of California.

53. As a direct and proximate result of Lantah's common law trademark infringement and unfair competition, Telegram Messenger has suffered, and unless Lantah is enjoined by this Court will continue to suffer, irreparable injury to Telegram Messenger's business, reputation, and goodwill in the GRAM mark for which Telegram Messenger has no adequate remedy at law.

54. As a direct and proximate result of Lantah's common law trademark infringement and unfair competition, Telegram Messenger has been forced to retain counsel to prosecute this claim and is entitled to recover its attorneys' fees and costs incurred herein.

### THIRD CLAIM
### (Unfair Competition Under Cal. Bus. & Prof. Code § 17200)

55. Telegram Messenger incorporates by reference the allegations in the preceding paragraphs of the Complaint.

56. In the course of conducting its business, Lantah's conduct—specifically, its use of a service mark confusingly similar to Telegram Messenger's GRAM mark in a manner that is likely to cause consumer confusion—constitutes unfair competition and unfair business practice in violation of California Business and Professions Code § 17200.

57. As a result of this unfair competition and unfair business practice, Telegram Messenger has suffered irreparable injury to its business, reputation, and goodwill in its GRAM mark. Telegram Messenger will continue to suffer irreparable injury unless Lantah's misconduct is enjoined.

**PRAYER FOR RELIEF**

WHEREFORE, Telegram Messenger respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to an Order:

1. Finding that: (i) Lantah has violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (ii) Lantah has committed trademark infringement under California common law; and (iii) Lantah has committed unfair competition under California state law;

2. Entering a preliminary and permanent injunction enjoining and restraining Lantah from using in commerce or in connection with any goods or services any mark, name, or design that creates a likelihood of confusion with Telegram's GRAM service mark and from engaging in any other acts of unfair competition and in engaging in false designation of origin;

3. Awarding Telegram Messenger its actual costs and attorneys' fees incurred in bringing this action pursuant to 15 U.S.C. § 1125(c) and California Business and Professions Code § 17200; and

4. Granting such other relief the Court deems just and proper.

Dated:  May 11, 2018

SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP

*/s/ John M. Neukom*_____

Attorney for Plaintiff
TELEGRAM MESSENGER INC

JURY TRIAL DEMANDED

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues properly triable of right by a jury.

Dated: May 11, 2018               SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP

*/s/ John M. Neukom*_____

Attorney for Plaintiff
TELEGRAM MESSENGER INC