JOHN NEUKOM (SBN 275887)
john.neukom@skadden.com
PATRICK HAMMON (SBN 255047)
patrick.hammon@skadden.com
JAMES Y. PAK (SBN 304563)
james.pak@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

Attorneys for Plaintiff
TELEGRAM MESSENGER INC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TELEGRAM MESSENGER INC, | CASE NO.:  3:18-cv-2811 |
| Plaintiff, | **PLAINTIFF TELEGRAM MESSENGER INC'S OPPOSITION TO DEFENDANT'S "COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT"** |
| v. | |
| LANTAH LLC, | |
| Defendant. | Date:          August 24, 2018<br>Time:          10:00 a.m.<br>Courtroom:  6, 17th Floor<br>Judge:        Hon. Charles R. Breyer |

1
2

**TABLE OF AUTHORITIES**

3

**CASES**

4
*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......................................................................................... 3

5
*Celotex Corp. v. Catrett*,
6
477 U.S. 317 (1986) ...................................................................................... 3, 5

7
*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) .......................................................................... 3

8
*JL Beverage Co. v. Jim Beam Brands Co.*,
9
828 F.3d 1098 (9th Cir. 2016) ...................................................................... 4, 5

10
*Sebastian Brown Productions, LLC v. Muzooka, Inc.*,
143 F. Supp. 3d 1026 (N.D. Cal. 2015) ............................................................ 6

11
12
*Tuccillo v. Geisha NYC, LLC*,
635 F. Supp. 2d 227 (E.D.N.Y. 2009) .............................................................. 8

13
*United States v. Diebold, Inc.*,
369 U.S. 654 (1962) .......................................................................................... 3

14
15
*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ............................................................................ 9

16

**RULES**

17
Fed. R. Civ. P. 56(a) .............................................................................................. 3

18

**OTHER AUTHORITIES**

19
Josh Constine, *Telegram Plans Multi-Billion Dollar ICO For Chat Cryptocurrency*,
20
TechCrunch (Jan. 8, 2018), https://techcrunch.com/2018/01/08/telegram-open-
network/ ............................................................................................................. 8

21
2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:10 (5th ed.
22
2018) .................................................................................................................. 8

23
3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:26 (5th ed.
2018) .................................................................................................................. 6

24
Theodore Schleifer, *Telegram's ICO Is Attracting the Industry's Newer Crypto Investors
While Firms Like Andreessen Horowitz Sit This One Out*, Recode (Jan. 26, 2018),
25
https://www.recode.net/2018/1/26/16937942/telegram-ico-cryptocurrency-venture-
capital ................................................................................................................ 9

26
27
28

**INTRODUCTION**

Plaintiff Telegram Messenger Inc (together with affiliates, "Telegram") respectfully requests that Defendant's "Counter-Motion for Partial Summary Judgment" (Docket No. 20, "SJ Motion") be denied.  Defendant's SJ Motion is flawed in numerous respects.  One is that Defendant has failed to apply the appropriate standard for summary judgment.  *See* Argument I, below; *see also* Legal Standards, below.  Another is that Defendant's SJ Motion relies on a mistaken premise—that the only way Telegram could ultimately prevail on its claims in this case is if it is able to show priority in the "GRAM" trademark before the particular date of February 25, 2018.  *See* Argument II, below.

But the third and most "to the point" reason that Defendant's SJ Motion should be denied is because it fails to account for the evidentiary record that is already before the Court.  Specifically, Telegram has already submitted evidence showing that it used the GRAM mark in commerce prior to February 25, 2018.  *See* Docket Nos. 16 through 16-5 ("PI Motion").[1]  For summary judgment purposes, that evidence must be viewed in the light most favorable to Telegram as the non-movant.  Viewing Telegram's evidence in that light, there should be no sincere dispute about whether summary judgment is appropriate.  It is not.  *See* Argument III, below.

**BACKGROUND**

**I.    Telegram's Complaint**

Telegram filed this case on May 11, 2018, asserting claims for (i) false designation of origin, (ii) common law trademark infringement, and (iii) statutory unfair competition.  *See* Docket No. 1.  The gravamen of Telegram's Complaint is that it has common law rights to use the mark "GRAM" with respect to cryptocurrency products and services, and that it has priority in such rights over Defendant because it used the GRAM mark in commerce (i) before Defendant did so, and furthermore (ii) before Defendant attempted to register for the mark with the USPTO on February 25, 2018.  *See, e.g.*, *id.* at ¶¶ 28-39.

---

[1]    While Telegram opposes Defendant's SJ Motion by relying on its PI Motion papers submitted on June 28, 2018, Telegram is not likewise relying on its PI Motion "reply" filings, dated July 19, 2018 (Docket Nos. 21 and 22, "PI Reply") for purposes of opposing Defendant's SJ Motion.  *See* Argument IV, below.

**TELEGRAM'S OPP. TO MOT. FOR PARTIAL SUMMARY JUDGMENT**                    **3:18-cv-2811**

## II.     Defendant's Answer & Counterclaims

On June 8, 2018, Defendant (i) denied Telegram's claims, and (ii) filed counterclaims.  *See* Docket No. 14.  The gravamen of Defendant's counterclaims may be fairly characterized as a "mirror image" of Telegram's claims that started this lawsuit.  Defendant alleges that it—not Telegram—has priority to use the GRAM mark with respect to cryptocurrency products and services.  Although in making such allegations (and in subsequent filings), Defendant has failed to allege that it has ever used the GRAM mark in commerce.  Instead, Defendant asks the Court to credit the filing of Defendant's ITU Application on February 25, 2018.  *See, e.g.*, Docket No. 14 at ¶¶ 16-18.

## III.    Telegram's PI Motion

On June 28, 2018, Telegram filed a motion for a preliminary injunction, seeking to enjoin Defendant from using the GRAM mark during the pendency of this case.  *See* PI Motion.

## IV.    Defendant's PI Opposition & "Partial" Summary Judgment Motion

On July 12, 2018, Defendant opposed Telegram's PI Motion and at the same time (in the same papers) moved for "partial summary judgment."  While Defendant has described its summary judgment motion as "partial," it does not appear to be partial in any respect.  Defendant is asking for (i) Telegram's "Complaint" to be "denied in its entirety," and (ii) entry of an order that "Lantah is entitled to judgment as a matter of law," presumably on all claims and counterclaims pleaded by either side.  *See* Docket No. 20-5 (Defendant's "Proposed Order Granting Lantah LLC's Motion for Partial Summary Judgment").

Discerning the exact basis of Defendant's SJ Motion—as opposed to Defendant's bases for opposing Telegram's PI Motion—is also somewhat difficult based on Defendant's "two in one" briefing papers.  For example, the bulk of Defendant's "Argument" submission is under the header "Summary Judgment for Lantah is Proper . . . " and yet much of that content addresses questions that are relevant to Telegram's PI Motion (such as irreparable harm, balancing the equities, and the public interest) and irrelevant to summary judgment.  *See* SJ Motion at 7-12.

That said, it appears that Defendant's SJ Motion is based on the straightforward argument that Telegram cannot meet its "burden of proving that it secured common law priority to the

**TELEGRAM'S OPP. TO MOT. FOR PARTIAL SUMMARY JUDGMENT**          **3:18-cv-2811**

1 disputed mark before . . . February 25, 2018." SJ Motion at 5 (explaining basis for Defendant's SJ

2 Motion in a separate "Summary Judgment" section).

3 **V.     Telegram's PI Motion Reply**

4          On July 19, 2018, Telegram filed its reply materials in support of its PI Motion.  *See*

5 Docket Nos. 21 and 22.  In doing so, Telegram was clear that it was not (through that filing)

6 opposing Defendant's SJ Motion.  *See* Docket No. 22 at 13 ("Defendant has also decided to use its

7 one-and-only opportunity in this case to move for summary judgment. . . . Telegram will respond

8 to that motion in due course; its opposition brief is due July 26, 2018.").  That remains the case

9 today—Telegram is not asking the Court to consider or rely on any aspect of its PI Motion Reply

10 in deciding Defendant's SJ Motion.  *See* Argument IV, below.

11                              **LEGAL STANDARDS**

12          By longstanding Order of this Court, each party is permitted to file only a single motion for

13 summary judgment during the pendency of a case.  *See* Standing Order No. 5 (Jun. 11, 2015)

14 ("Each party is limited to filing one summary judgment motion.").

15          For Defendant to prevail on its SJ Motion, it would have to show "that there is no genuine

16 dispute as to any material fact."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S.

17 317, 323 (1986) (holding that the moving party bears the initial burden of showing the absence of

18 any genuine dispute over a material fact).  Summary judgment is to be granted cautiously, with due

19 respect for a party's right to have its factually grounded claims and defenses tried to a jury.

20 *Celotex*, 477 U.S. at 327; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In

21 adjudicating Defendant's SJ Motion, this Court must view the facts and draw inferences in the

22 manner most favorable to Telegram as the non-movant.  *United States v. Diebold, Inc.*, 369 U.S.

23 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).

24          While the foregoing legal standards for summary judgment are well known and rarely

25 controversial, Telegram notes that certain aspects of Defendant's SJ Motion appear to conflate and

26 confuse the legal standards for Telegram's PI Motion (in which Telegram is the movant) versus

27 Defendant's cross-motion for "partial" summary judgment (in which Defendant is the movant).

28 For its pending PI Motion, like any preliminary injunction motion, Telegram as the movant is

1    obliged to address a four-part inquiry, one element of which is to show a "likelihood of success on

2    the merits." *See* PI Motion at 4-5 ("Preliminary Injunction Standard") (citing *Marlyn*

3    *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009)).   In

4    adjudicating whether Telegram has shown a "likelihood of success on the merits" for purposes of

5    the PI Motion, this Court is not obliged to view the evidence or draw inferences in favor of one

6    side or the other.  Furthermore, the degree of "likelihood of success on the merits" that Telegram is

7    required to show is itself a flexible standard, depending on how strongly the Court finds Telegram

8    to have succeeded in establishing the other three elements. *See* PI Motion at 5 (quoting *All. for the*

9    *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011): "[T]he elements of [a] preliminary

10   injunction test are balanced, so that a stronger showing of one element may offset a weaker

11   showing of another.").

12          By contrast, for its SJ Motion, Defendant as the summary judgment movant must show not

13   only the absence of any genuine dispute of material fact, but furthermore it must do so while all

14   evidence is deliberately construed in the light most favorable to Telegram.  *See* above (citing

15   *Celotex*, *Diebold* and *Chevron*).  Neither that exacting standard nor the "slanted" view of the

16   evidence in favor of the non-movant—both applicable for Defendant's SJ Motion—applies for

17   Telegram's PI Motion.  As the Ninth Circuit recently explained, when reversing a trial court that

18   applied a preliminary injunction standard to a motion for summary judgment:

19          The district court's failure to apply the correct standard is significant: on motion for
20          preliminary injunction, the plaintiff [such as Telegram]—as the moving party—bears
             the burden of establishing the merits of its claims.  *See Winter v. Nat. Res. Def.*
21          *Council, Inc.*, 555 U.S. 7, 20 (2008).  In contrast, on a defendant's motion for
             summary judgment [such as Defendant's SJ Motion], not only does the movant carry
22          the burden of establishing that no genuine dispute of material fact exists, but the court
             also views the evidence in the light most favorable to the non-moving party. *See, e.g.,*
23          [*Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).]   The
             defendant-movant must demonstrate that, even viewing the evidence in the light most
24          favorable to the plaintiff, the plaintiff cannot satisfy its burden to prove its claims.
             *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
25

26   *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016).

27

28

4

**ARGUMENT**

As argued by Defendant, summary judgment is appropriate because Telegram cannot "prov[e] that it secured common law priority to the [GRAM] mark before [Defendant] secured constructive use priority by filing an application at the [USPTO] on February 25, 2018." *See* SJ Motion at 5. Defendant further contends that Telegram cannot prove any such common law priority because it cannot prove "use in commerce" of the GRAM mark prior to February 25, 2018. *Id.* at 7-11. This argument should be rejected (and Defendant's SJ motion denied) for three reasons. First, Defendant has failed to apply the correct standard. Second, Defendant's argument relies on a misstatement of law regarding the importance or lack thereof for the date of February 25, 2018. Third, and most importantly, the evidentiary record already before the Court shows that summary judgment would be improper.

**I.    Defendant Does Not Apply The Correct Summary Judgment Standard**

Defendant's SJ argument is misguided on the law because it suggests that Telegram as the non-movant has a burden (in the context of opposing Defendant's SJ Motion) to show that it can prove priority in the GRAM mark. That is wrong. For Defendant's SJ Motion, it is Defendant's burden as the movant to show the absence of any genuine dispute of material fact, even while construing all evidence and drawing all inferences in the light most favorable to Telegram as the non-movant. *See Celotex Corp.*, 477 U.S. at 323.

This mistake of law is material to Defendant's SJ Motion. While Defendant's SJ Motion in one instance pays lip service to the appropriate standard (*see* SJ Motion at 11 ("Viewed in the light most favorable to Telegram, the evidence shows . . . ")), the substance of Defendant's argument shows a failure to apply it. *See id.* at 7-11 (characterizing Telegram's "Purchase Agreements" as "private fundraising" efforts, seemingly without any evidentiary basis to do so and plainly in an attempted "light most favorable" to Defendant rather than Telegram). If Defendant has an argument in favor of summary judgment that "views the evidence in the light most favorable to the non-moving party," *JL Beverage*, 828 F.3d at 1104-05, it has not yet shared it with Telegram or the Court.

**TELEGRAM'S OPP. TO MOT. FOR PARTIAL SUMMARY JUDGMENT                3:18-CV-2811**

## II.     Defendant Incorrectly Asserts "February 25" As The Only Relevant Priority Date

Defendant's SJ argument is also misguided on the law because it suggests that, to prevail in this priority fight between two rival users of the same mark, Telegram must show that it used the GRAM mark in commerce before the **specific date of February 25, 2018**, when Defendant filed a trademark application with the USPTO.  To be clear, Telegram can make (and has made) that exact showing.  *See, e.g.*, PI Motion at 6-7; Argument III, below.  But the suggestion that Telegram could not prevail in this case unless showing use in commerce before February 25, 2018, in particular, is in any event wrong on the law.

Suppose *arguendo* that Telegram (i) could prove that it used the GRAM mark in commerce starting on February 26, 2018 (or some other date falling after February 25, 2018), and yet (ii) could not prove any such use or priority prior to February 25, 2018.  Further suppose *arguendo* that Defendant never (at any time) succeeds in using the GRAM mark in commerce for its own purposes.[2]  In that scenario, Telegram would still have priority—over Defendant—in the GRAM mark; because Defendant's ITU Application affords Defendant no rights in and of itself.  *See Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1040 (N.D. Cal. 2015) (holding that party "cannot claim priority rights from the date the ITU application for the [mark] was filed" because the "constructive-use date is established only once the mark is registered"); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:26 (5th ed. 2018) ("Lanham Act § 7(c) states that the priority position of the ITU applicant is only 'contingent' on achieving the status of registration. Until then, the applicant's priority over later users or applicants is merely incomplete and inchoate.").

---

[2]      This particular supposition may not be far-fetched.  At this stage of the case, Defendant has (i) made two substantive filings (its Answer and Counterclaims, and its SJ Motion), and yet (ii) in neither filing has Defendant attempted to argue that it has (even as of today) ever successfully used the GRAM mark in commerce.  *See* Defendant's Answer and Counterclaims at *passim* (Docket No. 14) (nowhere claiming a use in commerce of the disputed mark); SJ Motion at *passim* (nowhere claiming a use in commerce of the disputed mark); SJ Motion at 2 n.2 ("Lantah does not rely on its own common law priority on its pending motion for summary judgment," *i.e.*, Defendant is not attempting to argue that it has ever used the GRAM mark in commerce, even today); *see also* Hammon Decl., Exh. H (Docket No. 16-2) (Defendant's own SEC filing, dated March 9, 2018, checking the box for "First Sale Yet to Occur" even as of that date).

**TELEGRAM'S OPP. TO MOT. FOR PARTIAL SUMMARY JUDGMENT**          **3:18-cv-2811**

Telegram does not expect the foregoing hypothetical scenario to be relevant to this case, given Telegram's substantial use in commerce of the GRAM mark that pre-dates February 25, 2018.  But if Telegram were forced to argue for a priority date after February 25, 2018, Telegram may still prevail on its claims.  Defendant's SJ Motion is thus based on the misguided premise that February 25, 2018, is the "end all, be all" date for a priority fight between these parties.

## III.   Telegram Has Adduced Ample Evidence Showing Priority In The GRAM Mark

Finally, Defendant's SJ argument is just plain wrong as a matter of the evidentiary record available to the Court.  Telegram has already adduced ample evidence showing it used the GRAM mark in commerce prior to February 25, 2018.  *See, e.g.*:

- PI Motion at 6-7 (explaining Telegram's "priority" position in this case at this time, with citations to supporting evidence);

- Perekopsky Decl. (Docket No. 16-3) at ¶ 9 (Telegram adopted the GRAM mark in 2017);

- Hammon Decl., Exh. A (Docket No. 16-2) (providing news articles, dated December 2017, reporting publicly on Telegram's GRAM offering);

- *Id.* at Exh. B (Telegram's February 13, 2018, SEC filing for GRAMs, disclosing a "Date of First Sale" of January 29, 2018; referring to "Purchase Agreements for Cryptocurrency"; disclosing a first round offering amount of $850 million; and disclosing 81 "Purchase Agreements" executed on or before February 13, 2018); and

- Perekopsky Decl. at ¶ 10 ("From January 2018 to March 2018, Telegram executed Purchase Agreements for more than $1.5 billion relating to GRAMS. Under the Purchase Agreements, persons or firms paid U.S. dollars or Euros in exchange for the right to receive a contractually agreed upon number of GRAMs following the successful launch of the TON Blockchain.  Some persons or firms had listed addresses in the United States (e.g., California, Colorado, Delaware, Illinois, Massachusetts and New Jersey.").

Not only has Telegram already adduced that evidence (showing its use in commerce of the GRAM mark before February 25, 2018), Telegram has furthermore adduced additional evidence showing that on whatever date it first used the GRAM mark in commerce, it was done prior to Defendant doing so.  As explained above, that kind of a showing may still support Telegram's claims in this case.  *See, e.g.*:

7

- Perekopsky Decl. at ¶ 10 ("From January 2018 to March 2018 . . . ");

- Hammon Decl., Exh. C (Telegram's March 29, 2018, SEC filing for GRAMs, disclosing a "Date of First Sale" of March 14, 2018, for Telegram's second round of GRAM Purchase Agreements; referring to "Purchase Agreements for Cryptocurrency"; disclosing an additional offering amount of $850 million; and disclosing 94 "Purchase Agreements" of $1 million or more);

- *Id.*, Exh. H (Defendant's March 9, 2018, SEC filing, failing to disclose any revenues and disclosing "First Sale Yet to Occur" for Defendant).

Furthermore, if the evidence is construed in the light most favorable to Telegram, not only can Telegram show it used the GRAM mark in commerce prior to Defendant's trademark application filing, and prior to any use in commerce by Defendant, the evidence also suggests that Defendant's conduct here has been in bad faith.  Or, at best, that Defendant has attempted to "squat" Telegram's mark, presumably in hopes of a large payment.  *See Tuccillo v. Geisha NYC, LLC*, 635 F. Supp. 2d 227, 232 (E.D.N.Y. 2009) (finding counterclaim-plaintiff had established likelihood of success on trademark infringement claim in part because of evidence of that counterclaim-defendant had submitted ITU for identical mark "in a bad faith effort to 'squat' on the mark in order to capitalize" on counterclaim-plaintiff's success); *see also* 2 McCarthy, *supra*, § 16:10 ("If a party, knowing of another's plans to sell under a mark, rushes in to make a preemptive first sale by adding on the mark to an existing, already otherwise marked product, such a use can be characterized as a bad-faith add-on use which does not count for priority purposes").

For example:

- The evidence is undisputed that Telegram's "GRAM" offering was being written about publicly as of December 2017, *see* Hammon Decl., Exh. A (Docket No. 16-2) (news articles);

- Defendant has furthermore admitted that it became aware of Telegram's use of the "GRAM" mark in December 2017, *see* Docket No. 14 at 8, ¶ 15; and

- The evidence also shows that several notable, national publications reported about the details of Telegram's GRAM offering **before** Defendant attempted to apply for a trademark on "GRAM," including reporting that famous venture capital firms were contracting for Telegram's GRAMs.  *See, e.g.*, PI Motion at 2 n.2 (citing to articles from THE NEW YORK TIMES and THE WALL STREET JOURNAL published prior to February 25, 2018); Josh Constine, *Telegram Plans Multi-Billion Dollar ICO For Chat Cryptocurrency*, TechCrunch (Jan. 8, 2018), https://techcrunch.com/2018/01/08/telegram-open-network/ ("[I]ts cryptocurrency

8

will be called 'Gram'. . . . "); Theodore Schleifer, *Telegram's ICO Is Attracting the Industry's Newer Crypto Investors While Firms Like Andreessen Horowitz Sit This One Out*, Recode (Jan. 26, 2018), https://www.recode.net/2018/1/26/16937942/ telegram-ico-cryptocurrency-venture-capital (reporting "Benchmark, Sequoia Capital [and] Kleiner Perkins Caufield & Byers" as GRAMs contracting parties).[3]

That kind of evidence does not support a conclusion that Telegram's priority claims here have no merit, nor that Defendant has a valid interest and priority in the GRAM mark. That kind of evidence suggests instead that a small company in Florida learned (in December 2017, January 2018, and early February 2018) about a large-scale cryptocurrency offering by Telegram and decided to attempt to make money through a trademark application dated February 25, 2018.

## IV.   Defendant Should Not Be Permitted To Use A "Reply" On The SJ Motion As A Backdoor "Sur-Reply" On Telegram's PI Motion

Telegram questions whether Defendant filed its SJ Motion while privately knowing it lacked merit and expecting it to be denied. Telegram questions that for many reasons, not the least of which is that it cannot be disputed with sincerity that Telegram has already adduced evidence that shows—if viewed in the light most favorable to Telegram, as required for a summary judgment motion—Telegram's "use in commerce" and thus priority in the GRAM mark prior to February 25, 2018. *See generally* PI Motion; *see also* Argument III, above.

Relatedly, Telegram questions whether Defendant's true aim in filing an unmeritorious summary judgment motion was to achieve in effect a "sur-reply" opportunity in relation to Telegram's pending PI Motion. *Compare* Docket No. 16 (docket header for Telegram's PI Motion, indicating a hearing date of August 3, 2018), *with* Docket No. 20 (docket header for Defendant's SJ Motion, indicating a "reply" deadline for Defendant of August 2, 2018). Wary that Defendant may have filed a disingenuous summary judgment motion in hopes of attaining a "sur-reply" opportunity for Telegram's PI Motion, Telegram with this opposition has intentionally and

---

[3]      This Court may take judicial notice of the public news articles cited above given that they are offered here not to show the truth of the matters asserted therein, but instead to show actual and/or constructive notice by Defendant. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" (quoting *Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006))).

1  consistently relied on its evidence and argument submitted with its initial PI Motion papers, filed

2  on June 28, 2018, prior to Defendant's SJ Motion.  If Defendant's forthcoming "reply" on its SJ

3  Motion seeks to address PI Motion arguments, or any aspect of Telegram's PI Motion Reply, that

4  would be improper and Telegram reserves the right to ask the Court to strike or disregard any such

5  submission.

6  **CONCLUSION**

7          For at least the foregoing reasons, Telegram respectfully requests that Defendant's SJ

8  Motion be denied.

9

10

11  DATED:          July 26, 2018          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

12

13                                        By:          /s/ John Neukom

14                                        John Neukom

15                                        Attorney for Plaintiff
                                          TELEGRAM MESSENGER INC

16

17

18

19

20

21

22

23

24

25

26

27

28

**TELEGRAM'S OPP. TO MOT. FOR PARTIAL SUMMARY JUDGMENT**          **3:18-cv-2811**

1

## CERTIFICATE OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF SANTA CLARA

3

4

     I am employed in the county of Santa Clara, State of California.  I am over the age of 18 and not a party to the action; my business address is 525 University Avenue, 14th Floor, Palo Alto, CA 94301.  My email address is john.neukom@skadden.com.

5

6

     On **July 26, 2018**, I served documents described as:

7

**PLAINTIFF TELEGRAM MESSENGER INC'S
OPPOSITION TO COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT**

8

9

     ☒     **(BY CM/ECF NOTICE OF ELECTRONIC FILING)**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

10

11

12

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

13

14

     Executed on **July 26, 2018,** at Palo Alto, California.

15

16

     _____John Neukom_____          _____/s/ John Neukom_____
              Type or Print Name                           Signature

17

18

19

20

21

22

23

24

25

26

27

28

**TELEGRAM'S OPP. TO MOT. FOR PARTIAL SUMMARY JUDGMENT**                    **3:18-CV-2811**
584963-PALSR01A - MSW