1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT
6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8     TELEGRAM MESSENGER INC,              Case No.  18-cv-02811-CRB
9                     Plaintiff,
10                                          **ORDER DISMISSING CASE**
          v.
11
      LANTAH, LLC,
12                    Defendant.

13          This is a trademark dispute between Plaintiff Telegram Messenger Inc. ("Telegram") and

14   Defendant Lantah, LLC ("Lantah") regarding the use of the mark GRAM for a cryptocurrency.

15   After two years of litigation, Telegram moves to voluntarily dismiss the case without prejudice.

16   Telegram makes this motion after settling a separate litigation with the SEC that required

17   Telegram to undo its previous financing transactions involving the GRAM cryptocurrency.

18          For the reasons set forth below, the Court GRANTS the Motion to Voluntarily Dismiss

19   Telegram's claims without prejudice, on the conditions that (1) the preliminary injunction is

20   vacated, and (2) Telegram shall pay Lantah's reasonable attorneys' fees and costs.

21   **I.      BACKGROUND**

22          Plaintiff Telegram is a large technology company best known for its electronic messaging

23   service.  See Compl. (dkt. 1) ¶¶ 16–19.  In 2017, Telegram began developing a cryptocurrency

24   exchange network, using the name GRAM for the cryptocurrency.  Mot. (dkt. 69) at 1.  To finance

25   this venture, Telegram executed over $1.5 billion worth of Purchase Agreements with investors,

26   promising future delivery of GRAMs.  Compl. ¶¶ 28–34; Mot. at 1.

27          Defendant Lantah is a small technology company founded in 2017 with the intention of

28

United States District Court
Northern District of California

issuing a cryptocurrency also called GRAM.  <u>See</u> Opp'n (dkt. 73) at 1.  By 2018, Lantah submitted an application for the GRAM mark with the United States Patent and Trademark Office. <u>Id.</u> at 3.

### A.    Procedural History

On May 11, 2018, Telegram filed this suit against Lantah, bringing claims of false designation of origin, common law trademark infringement, and unfair competition.  <u>See generally</u> Compl.  On June 8, 2018, Lantah filed its answer, along with counterclaims alleging that Lantah, not Telegram, had priority over the GRAM mark.  <u>See generally</u> Answer (dkt. 14).

Telegram then moved for a preliminary injunction barring Lantah from using the GRAM mark.  Mot. at 1.  Lantah opposed the preliminary injunction and filed for summary judgment.  <u>Id.</u> This Court granted Telegram's motion for a preliminary injunction and denied Lantah's summary judgment motion.  <u>Id.</u> at 2.  This Court held that Telegram was likely to succeed on its claims that it had been using the mark in commerce before Lantah, relying mostly on Telegram's GRAM Purchase Agreements.  <u>See</u> Order Granting Prelim. Inj. (dkt. 39) at 10.  Following this decision, Telegram filed its own summary judgment motion, while Lantah appealed the preliminary injunction order.  Mot. at 2.  The Court stayed Telegram's summary judgment motion pending appeal.  Order Staying MSJ. (dkt. 48).

On July 17, 2019, the Ninth Circuit affirmed the preliminary injunction.  <u>Id.</u>  The case then returned to this Court.  Lantah served third-party subpoenas and requests for production on a news outlet that had covered Telegram's Purchase Agreements.  <u>Id.</u> at 2–3.  Lantah also served Telegram with 157 requests for admission, 32 requests for production of documents, and 15 interrogatories.  <u>Id.</u> at 3.  These requests were mostly related to Telegram's ongoing litigation with the SEC, discussed below.  <u>Id.</u>  At the first and only case management conference on November 15, 2019, the Court stayed all discovery and dispositive motions.  <u>Id.</u>

### B.    SEC Action

While Telegram and Lantah pursued their trademark claims in this Court, the SEC began investigating Telegram.  Thompson Decl., Ex. 12 (dkt 73-2) ¶¶ 8–11.

United States District Court
Northern District of California

On October 11, 2019, the SEC brought suit against Telegram in the Southern District of New York, alleging that Telegram violated securities regulations by using the GRAM Purchase Agreements as financing vehicles.  SEC v. Telegram Grp. Inc., Case No. 1:19-cv-09439-PKC (S.D.N.Y. Oct. 11, 2019) (the "SEC Action").  On March 24, 2020, the SEC obtained a preliminary injunction against Telegram in that case, barring the company from delivering GRAMs pursuant to the earlier Purchase Agreements.  SEC v. Telegram Grp. Inc., No. 19-CV-9439 (PKC), 2020 WL 1430035 (S.D.N.Y. Mar. 24, 2020).

By May 2020, Telegram announced that it would no longer be pursuing its cryptocurrency network, and began exiting its Purchase Agreement transactions.  Id. at 4.  On June 26, 2020, the Southern District of New York approved a settlement between the SEC and Telegram.  Thompson Decl., Ex. 16.  Without admitting or denying the allegations in the SEC's initial complaint, Telegram agreed to return funds from its GRAM Purchase Agreements, pay an $18.5 million civil penalty, and give the SEC notice before any new digital issuances for the next three years.  Id.

### C.    Motion to Dismiss

On June 9, 2020, as the SEC Action neared completion, Telegram filed this motion to voluntarily dismiss its claims.  See generally Mot.  Telegram asks the Court to dismiss its claims without prejudice and without conditions.  Id. at 10.

## II.    LEGAL STANDARD

Under Rule 41(a)(2), "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  A district court should grant voluntary dismissal "unless a defendant can show that it will suffer some plain legal prejudice as a result."  Smith v. Lenches, 263 F.3d 972, 975 (9th Cir. 2001).  The Ninth Circuit interprets "legal prejudice" to mean "prejudice to some legal interest, some legal claim, some legal argument."  Id. at 975 (quoting Westlands Water Dist. v. United States, 100 F.3d 94, 97 (9th Cir. 1996)).

"When confronted with a motion for voluntary dismissal pursuant to Rule 41(a)(2), the Court must determine: (1) whether to allow dismissal; (2) whether the dismissal should be with or

without prejudice; and (3) what terms and conditions, if any, should be imposed." <u>Fraley v. Facebook, Inc.</u>, No. 11-CV-01726-LHK, 2012 WL 893152, at *2 (N.D. Cal. Mar. 13, 2012) (citing <u>Williams v. Peralta Cmty. Coll. Dist.</u>, 227 F.R.D. 538, 539 (N.D. Cal. 2005)).

## III.   DISCUSSION

Telegram requests that the Court dismiss all of the claims in its Complaint without prejudice and without any conditions.  Mot. at 10.  Lantah makes three counterarguments.  First, Lantah argues that the Court should "deny Telegram's claims as a matter of law."  Opp'n at 10.  In the alternative, Lantah argues that the Court should dismiss Telegram's claims with prejudice, and award Lantah reasonable attorneys' fees and costs.  <u>Id.</u> at 15.  And finally, Lantah argues that even if the Court dismisses Telegram's claims without prejudice, it should still award Lantah reasonable attorneys' fees and costs.  <u>Id.</u>  In all scenarios, Lantah requests that the Court vacate the preliminary injunction.  <u>Id.</u>

### A.   Dismissal of Claims

As an initial matter, the Court will allow dismissal.  Latah's request that the Court rule on Telegram's claims, <u>see</u> Opp'n at 10, is ambitions but not well-taken.

### B.   Dismissal With or Without Prejudice

Next, the Court must determine whether to dismiss Telegram's claims with or without prejudice.  In so doing, it will consider: "(1) the defendant's effort and expense involved in preparing for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; and (3) insufficient explanation of the need to dismiss." <u>See</u> <u>Fraley</u>, 2012 WL 893152, at *3 (citing <u>Burnette</u>, 828 F. Supp. at 1443–44).

#### 1.   Effort and Expense Involved in Preparing for Trial

The first factor the Court examines is Lantah's effort and expense in preparing for trial. <u>See</u> <u>id.</u> at *3.

Telegram argues that the case has not progressed very far and that therefore expenses in preparing for trial are limited.  Mot. at 7.  Courts look at how far proceedings have progressed to determine effort and expense by defendants.  <u>See, e.g.</u>, <u>Fraley</u>, 2012 WL 893152, at *4 (weighing

United States District Court
Northern District of California

1    the "relatively early stage of the proceedings" when granting a motion to dismiss without

2    prejudice); <u>Williams</u>, 227 F.R.D. at 539–40 (also weighing the "relatively early stage of the

3    proceedings" when granting a motion to dismiss without prejudice).

4         Telegram notes that the Court stayed the case for over a year pending appeal of the

5    preliminary injunction. Mot. at 7. There has been only one case management conference, where

6    the Court again stayed all discovery and dispositive motions, and one unsuccessful settlement

7    conference. <u>Id.</u> No party has produced discovery responses, and there is no trial date set. <u>Id.</u>

8    Lantah counters that it has exerted considerable effort and expense. The case has been ongoing

9    for over two years. Opp'n at ii. Lantah appealed the preliminary injunction. <u>Id.</u> at i. And while

10   the parties have produced no discovery responses, Lantah developed and served hundreds of

11   interrogatories to Telegram when trying to defeat summary judgment. <u>See</u> Mot. at 2–3.

12        Lantah's efforts were not insignificant. Even so, the suit is at a relatively early stage,

13   favoring dismissal without prejudice.

14                    **2.      Lack of Diligence by Plaintiff in Prosecuting Action**

15        Telegram argues that it has been diligent in prosecuting this action against Lantah, pointing

16   primarily to its prompt motions and successes in court thus far. Mot. at 7. Telegram filed a

17   detailed complaint, quickly followed with a successful motion for a preliminary injunction that

18   was affirmed by the Ninth Circuit, and then filed a motion for summary judgment. Reply (dkt. 74)

19   at 6–7. Telegram also defeated Lantah's earlier motion for summary judgment. <u>Id.</u> Telegram was

20   diligent in its prosecution, which favors dismissal without prejudice.

21                    **3.      Insufficient Explanation of Need to Dismiss**

22        Finally, Telegram provides a simple explanation for its need to dismiss. Telegram decided

23   to dismiss its actions

24                    in light of SEC activity and SEC-initiated litigation in New York, as
25                    well as its contractual obligations, to halt its use of the GRAM mark
                      in connection with cryptocurrency services, and accordingly it is not
26                    interested in pursuing litigation against Lantah based on its rights in
                      that mark.
27
28   Mot. at 7–8. A term of Telegram's settlement of the SEC litigation is to exit all of its GRAM-

5

1   related purchase agreements and give the SEC notice of any digital asset issuances for the next

2   three years.  Thompson Decl., Ex. 16.  This explanation is sufficient as to why Telegram would no

3   longer wish to continue litigation regarding the trademark for a product it no longer intends to use.

4      Telegram also explains why it wants to preserve its potential claims over the GRAM mark

5   despite stopping its cryptocurrency business, and therefore why it requests dismissal without

6   prejudice.  Telegram argues that it still may be interested in using the GRAM mark on another

7   related product in the future, and expresses concerns that "given the publicity of Telegram's

8   GRAM offering . . . there may be a significant risk of confusion in the minds of consumers as to

9   the origin of Lantah's services if Lantah moves forward with a 'gram' cryptocurrency in the future

10   . . . ."  Reply at 3–4.

11      Lantah argues that this explanation is insufficient, and that Telegram is merely attempting

12   to avoid an adverse judgment.  "A district court may consider whether the plaintiff is requesting a

13   voluntary dismissal only to avoid a near-certain adverse ruling."  Maxum Indem. Ins. Co. v. A-1

14   All Am. Roofing Co., 299 F. App'x 664, 666 (9th Cir. 2008); see also Raygarr LLC v. Employers

15   Mut. Cas. Co., No. CV-18-00246-TUC-RM, 2018 WL 4207998 (D. Ariz. Sept. 4, 2018)

16   ("Voluntary dismissals without prejudice are disfavored when the plaintiff is plainly seeking to

17   avoid an adverse judgment.").  But Telegram is not facing a guaranteed adverse judgment, given

18   its success on its claims thus far, and the absence of a holding in the SEC case that Telegram's use

19   of GRAMs was unlawful.

20      This explanation is sufficient for voluntary dismissal.  Considering all three factors, the

21   Court dismisses this case without prejudice.

22      **C.      Terms and Conditions of Dismissal**

23      Finally, the Court must determine what, if any, terms and conditions to impose upon

24   dismissal.  See Fraley, 2012 WL 893152, at *3.  Lantah argues that if the Court allows dismissal

25   without prejudice, that dismissal should be contingent upon (1) vacatur of the preliminary

26   injunction and (2) payment of reasonable attorneys' fees and costs.  Opp'n at 15.  Rule 41(a)(2)

27   motions may dismiss claims on "on terms that the court considers proper."  Fed. R. Civ. P.

28

United States District Court
Northern District of California

41(a)(2).

### 1.      Preliminary Injunction

Lantah asks that the Court vacate the preliminary injunction.  Opp'n at iii.  The Court has discretion to grant terms of dismissal other than just fees and costs.  See, e.g., Sherman v. Yahoo! Inc., No. 13CV0041-GPC-WVG, 2015 WL 473270, at *5 (S.D. Cal. Feb. 5, 2015) (granting dismissal contingent upon completing a deposition and discovery responses).  The Court granted the preliminary injunction when this litigation was actively pending, when Telegram was in the midst of its business dealings with the GRAM mark, and before the SEC action had begun.  Mot. at 2–4.  Now that Telegram has voluntarily dismissed its claims and undone its GRAM transactions, the reasoning behind the injunction no longer stands.  The Court therefore grants this condition and vacates the injunction.[1]

### 2.      Attorneys' Fees and Costs

Lantah also requests reasonable attorneys' fees and costs.  Opp'n at iii.  "Although costs are often awarded as a condition of dismissal without prejudice . . . the Ninth Circuit has stated that '[i]mposition of costs and fees as a condition for dismissing without prejudice is not mandatory.'"  Williams, 227 F.R.D. at 540 (quoting Westlands, 100 F.3d at 97).  "'In determining whether to award costs to a defendant after a voluntary dismissal without prejudice, courts generally consider the following factors: (1) any excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by a defendant in preparing for trial; (3) the extent to which the litigation has progressed; and (4) the plaintiff's diligence in moving to dismiss.'"  Fraley, 2012 WL 893152, at *4 (quoting Williams, 227 F.R.D. at 540).  The decision to award fees is even more discretionary.  See Arteris S.A.S. v. Sonics, Inc., No. C 12-0434 SBA, 2013 WL 3052903, at *4 (N.D. Cal. June 17, 2013) (noting  that "[t]he court's imposition of fees and costs is discretionary"); Co–Investor, AG v. Fonjax, Inc., No. C 08-1812 SBA, 2010 WL 1292767, at *3 (N.D. Cal 2010) (highlighting that "Rule 41(a)(2) exists chiefly for the defendant's protection"

---

[1] At the motion hearing, counsel for Telegram asserted that the injunction would dissolve in any case with the dismissal of the case.

United States District Court
Northern District of California

1   when deciding whether to award attorneys' fees).

2          The first factor considers the costs Lantah would face in a second litigation.  Id.  Telegram

3   argues that because the litigation has not progressed very far, Lantah has not incurred significant

4   costs in the instant case, meaning that Lantah would not face significant duplicative costs in a

5   second litigation.  Mot. at 8–9.  However, as discussed above, while the litigation has not

6   progressed very far, Lantah has still expended resources appealing the preliminary injunction and

7   opposing summary judgment.  See Mot. at 2–3.  Lantah also had to defend itself in this suit in a

8   distant venue.  See Opp'n at i.  So, while Lantah would not have to redo years of discovery, there

9   would surely be some duplicative costs for Lantah.

10          The Court discussed the next three factors in connection with whether to dismiss with

11   prejudice.  Lantah has put effort and expenses into this two-year litigation, given the lengthy

12   appeals process for the preliminary injunction.  Opp'n at i–ii.  However, this litigation has not

13   progressed to a meaningful extent toward trial and the parties have conducted very limited

14   discovery.  Mot. at 7.  And Telegram has been diligent in its dismissal, filing this motion before

15   even officially settling with the SEC.  See id. at 4.

16          Taken together, considering Lantah's potential duplicative costs and the effort already put

17   into the litigation, the Court concludes that Lantah is entitled to recover costs as a condition of

18   dismissal.

19          Telegram makes two additional counterarguments as to why the Court should not grant

20   Lantah fees and costs: (a) the fees and costs that Lantah incurred during this litigation will be

21   useful in any ongoing litigation, and (b) Lantah's fees and costs are a product of the company's

22   own unsuccessful litigation strategy.

23                         a.      **Usefulness in Continuing Litigation**

24          First, Telegram notes that even when justified, "a defendant is entitled only to recover, as a

25   condition of dismissal under [Rule] 41(a)(2), attorneys['] fees or costs for work which is not

26   useful in continuing litigation between the parties."  Koch v. Hankins, 8 F.3d 650, 652 (9th Cir.

27   1993).  Telegram argues that any work done by Lantah in this litigation would be useful in any

28

United States District Court
Northern District of California

8

1    continuing litigation, because the essential question of who has the priority right over GRAM

2    remains.  Mot. at 9–10.

3          The briefing thus far has focused on whether Telegram's GRAM Purchase Agreements

4    established a "use in commerce" because it had not actually delivered GRAMs, nor offered

5    GRAMs to the general public.  See Order Granting Prelim.  Inj. at 10.  In light of the SEC Action,

6    any future litigation would likely address whether the Purchase Agreements were a lawful use in

7    commerce, an entirely new issue.  Therefore, the work done by Lantah in this litigation is not

8    necessarily all useful in continuing litigation, and should still be eligible for recovery.

9          Lantah has not yet submitted records of its fees and costs, though, and so the Court cannot

10   yet rule on which fees and costs would be useful in future litigation.  See Koch, 8 F.3d at 652

11   (holding that a district court must "differentiat[e] between work product which was rendered

12   useless and that which might be of use in [future litigation]").  The Court DIRECTS the parties to

13   meet and confer regarding an appropriate award of fees and costs, given this standard.  In the

14   event that the parties cannot agree, Lantah shall submit its records of fees and costs, along with a

15   proposal of no more than ten pages.  Telegram may then respond within 14 days with a competing

16   proposal of no more than ten pages, and Lantah may file a reply of no more than five pages within

17   seven days.  See Kelly v. Eli Lilly & Co., No. 14-CV-03869-JST, 2015 WL 2062047, at *2 (N.D.

18   Cal. Apr. 30, 2015) (applying roughly this same process).

19                    **b.    Unsuccessful Litigation Strategy**

20         Finally, Telegram argues that the majority of Lantah's costs were created by

21   "its own (unsuccessful) litigation strategy" and therefore Telegram should not have to pay them.

22   Mot. at 10.  Telegram relies on Smith-Dickerson v. State Farm Mut. Auto. Ins. Co., Inc., No. 18-

23   CV-00189-EMC, 2018 WL 3730464 (N.D. Cal. Aug. 6, 2018), where Judge Chen held that

24   "[o]ther litigation costs shall not be awarded because they are excessive or avoidable," noting as

25   an example that "the decision to remove was made by [defendant] and thus [plaintiff] should not

26   be required to bear that cost."  2018 WL 3730464, at *2.  Here Telegram points to Lantah's

27   unsuccessful summary judgment motion, denied appeal of the preliminary injunction, and

28

"excessive" discovery requests as examples of Lantah making voluntary and discretionary litigation choices. Mot. at 10. While Lantah's decision to appeal the preliminary injunction was certainly its own, defending itself against a preliminary injunction that was halting its entire business does not seem "excessive or avoidable." Opp'n at i. In contrast, in Smith-Dickerson, the plaintiff voluntarily dismissed her claims to pursue her claims in state court and join non-diverse parties, so the defendants' choice to remove the initial claims to federal court does seem more avoidable. 2018 WL 3730464, at *2. Again, for the Court to determine what costs and fees may have been excessive, Lantah will need to submit detailed records.

The Court will award reasonable attorneys' fees and costs to Lantah.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Telegram's Motion to Dismiss without prejudice, on the conditions that (1) the preliminary injunction is vacated, and (2) Lantah is awarded reasonable attorneys' fees and costs, to be determined by stipulation or (failing that) following additional briefing as outlined above.

In light of the dismissal of Telegram's claims, the Court DIRECTS Lantah to advise the Court within 20 days of how it wishes to proceed vis-à-vis its counterclaims. See Fed. R. Civ. P. 41(a)(2) ("If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.").

**IT IS SO ORDERED.**

Dated: August 24_, 2020

CHARLES R. BREYER
United States District Judge