United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TELEGRAM MESSENGER INC,
Plaintiff,

v.

LANTAH, LLC,
Defendant.

Case No. 18-cv-02811-CRB

**ORDER GRANTING MOTION FOR VOLUNTARY DISMISSAL OF COUNTERCLAIMS AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS**

This is a trademark dispute between Plaintiff Telegram Messenger Inc. ("Telegram") and Defendant Lantah, LLC ("Lantah") regarding the use of the mark GRAM for a cryptocurrency. In August 2020, the Court granted Telegram's motion to voluntarily dismiss the case without prejudice, on the condition that Telegram pay Lantah's reasonable attorneys' fees and costs. Lantah now seeks to recover those fees and costs. Lantah also moves to voluntarily dismiss its counterclaims, also without prejudice.

For the reasons set forth below, the Court GRANTS the Motion to Voluntarily Dismiss Lantah's counterclaims without prejudice, on the condition that Lantah pay Telegram's reasonable attorneys' fees and costs. The Court also GRANTS in part Lantah's motion for attorneys' fees and costs, and awards Lantah $618,240 in attorneys' fees and $6,737.35 in costs.

## I. BACKGROUND

### A. Parties

Plaintiff Telegram is a large technology company best known for its electronic messaging service. <u>See</u> Compl. (dkt. 1) ¶¶ 16–19. In 2017, Telegram began developing a cryptocurrency exchange network, using the name GRAM for the cryptocurrency. Telegram's Mot. to Dismiss (dkt. 69) at 1. To finance this venture, Telegram executed over $1.5 billion worth of Purchase

Agreements with investors, promising future delivery of GRAMs. Compl. ¶¶ 28–34; Telegram's Mot. to Dismiss at 1.

Defendant Lantah is a small technology company founded in 2017 with the intention of issuing a cryptocurrency also called GRAM. See Lantah's Opp'n (dkt. 73) at 1. In 2018, Lantah applied for the GRAM mark with the United States Patent and Trademark Office. Id. at 3.

**B. Procedural History**

**1. Trademark Infringement Case**

On May 11, 2018, Telegram filed this suit against Lantah, bringing claims of false designation of origin, common law trademark infringement, and unfair competition. See generally Compl. On June 8, 2018, Lantah filed its answer, along with counterclaims alleging that Lantah, not Telegram, had priority over the GRAM mark. See generally Answer (dkt. 14). At this point, some media coverage referred to Lantah as a "trademark squatter." See Jeffery Decl., Ex. 9–10 (dkt. 73-1).

Telegram then moved for a preliminary injunction barring Lantah from using the GRAM mark. Telegram's Mot. to Dismiss at 1. Lantah opposed the preliminary injunction and filed for summary judgment. Id. This Court granted Telegram's motion for a preliminary injunction and denied Lantah's motion for summary judgment. Id. at 2. This Court held that Telegram was likely to succeed on its claim that it had been using the mark in commerce before Lantah, relying mostly on Telegram's expensive and widely publicized GRAM Purchase Agreements. See Order Granting Prelim. Inj. (dkt. 39) at 10. Following this decision, Telegram filed its own summary judgment motion, while Lantah appealed the preliminary injunction order. Telegram's Mot. to Dismiss at 2. The Court stayed Telegram's summary judgment motion pending appeal. Order Staying MSJ. (dkt. 48).

On July 17, 2019, the Ninth Circuit affirmed the preliminary injunction. Id. Lantah then filed petitions for rehearing and rehearing en banc, which were both denied. Id.

The case then returned to this Court. Lantah served third-party subpoenas and requests for production on a news outlet that had covered Telegram's Purchase Agreements. Id. at 2–3. Lantah also served Telegram with 157 requests for admission, 32 requests for production of

United States District Court
Northern District of California

documents, and 15 interrogatories. Id. at 3. These requests were mostly related to Telegram's ongoing litigation with the SEC, discussed below. Id. At the first and only case management conference, on November 15, 2019, the Court stayed all discovery and dispositive motions. Id.

**2. SEC Action**

While Telegram and Lantah pursued their trademark claims in this Court, the SEC began investigating Telegram. Thompson Decl., Ex. 12 (dkt 73-2) ¶¶ 8–11.

On October 11, 2019, the SEC sued Telegram in the Southern District of New York, alleging that Telegram violated securities regulations by using the GRAM Purchase Agreements as financing vehicles. SEC v. Telegram Grp. Inc., Case No. 1:19-cv-09439-PKC (S.D.N.Y. Oct. 11, 2019) (the "SEC Action").

On March 24, 2020, the SEC obtained a preliminary injunction against Telegram, barring the company from delivering GRAMs pursuant to those earlier Purchase Agreements. SEC v. Telegram Grp. Inc., No. 19-CV-9439 (PKC), 2020 WL 1430035 (S.D.N.Y. Mar. 24, 2020). Telegram initially appealed the preliminary injunction order to the Second Circuit, then withdrew its appeal. Telegram's Mot. to Dismiss at 3–4.

By May 2020, Telegram announced that it would no longer pursue its cryptocurrency network and began exiting its Purchase Agreement transactions. Id. at 4. On June 26, 2020, the Southern District of New York approved a settlement between the SEC and Telegram. Thompson Decl., Ex. 16. Without admitting or denying the allegations in the SEC's initial complaint, Telegram agreed to return funds from its GRAM Purchase Agreements, pay an $18.5 million civil penalty, and give the SEC notice before any new digital issuances for the next three years. Id.

**3. Telegram's Motion for Voluntary Dismissal**

On June 9, 2020, as the SEC Action neared completion, Telegram filed a motion to voluntarily dismiss its claims. See generally Telegram's Mot. to Dismiss. The Court granted Telegram's motion without prejudice on the conditions that 1) the preliminary injunction be vacated, and 2) Telegram pay Lantah's reasonable attorneys' fees and costs. Order Granting Telegram's Voluntary Dismissal (dkt. 77) at 10. The Court also directed Lantah to advise the Court of how it wished to proceed with its counterclaims. Id.

United States District Court
Northern District of California

**4. The Pending Motions**

On September 14, 2020, Lantah informed the Court that it planned to seek voluntary dismissal of its counterclaims. See Lantah's Notice of Intent (dkt. 78) at 2. Shortly thereafter, Lantah filed this motion to voluntarily dismiss its counterclaims without prejudice. See generally Lantah's Mot. to Dismiss (dkt. 80). Lantah also filed this motion for attorneys' fees and costs pursuant to one of the conditions that this Court imposed upon granting Telegram's motion for voluntary dismissal. See generally Lantah's Fee Mot. (dkt. 79); see also Order Granting Telegram's Voluntary Dismissal at 10.

Telegram opposed Lantah's motion to dismiss its counterclaims and argued that the Court should condition dismissal without prejudice upon Lantah paying Telegram reasonable attorneys' fees and costs. Opp'n to Mot. to Dismiss (dkt. 81) at 1. Telegram also opposed Lantah's motion for attorneys' fees and costs. Opp'n to Fee Mot. (dkt. 82) at 1. Lantah filed replies in support of both motions. See generally Reply re Mot. to Dismiss (dkt. 84); Reply re Fee Mot. (dkt. 83).

## II. LEGAL STANDARD

### A. Motion for Voluntary Dismissal

Under Rule 41(a)(2), "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Rule 41 also applies to dismissals of any counterclaims. See Fed. R. Civ. P. 41(a)(3). A district court should grant voluntary dismissal "unless a defendant can show that it will suffer some plain legal prejudice as a result." Smith v. Lenches, 263 F.3d 972, 975 (9th Cir. 2001). The Ninth Circuit interprets "legal prejudice" to mean "prejudice to some legal interest, some legal claim, some legal argument." Id. at 976 (quoting Westlands Water Dist. v. United States, 100 F.3d 94, 97 (9th Cir. 1996)).

"When confronted with a motion for voluntary dismissal pursuant to Rule 41(a)(2), the Court must determine: (1) whether to allow dismissal; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed." Fraley v. Facebook, Inc., No. 11-CV-01726-LHK, 2012 WL 893152, at *2 (N.D. Cal. Mar. 13, 2012) (citing Williams v. Peralta Cmty. Coll. Dist., 227 F.R.D. 538, 539 (N.D. Cal. 2005)).

**B. Motion for Attorneys' Fees and Costs**

Courts may dismiss an action, at plaintiff's request, on terms that it considers proper. See Fed. R. Civ. P. 41(a)(2). Courts generally impose terms and conditions for the defendant's protection. See Westlands Water Dist v. United States, 100 F.3d 94, 97 (9th Cir. 1996). Courts are permitted, but not required, to impose payment of attorneys' fees and costs as a condition for granting a voluntary dismissal without prejudice. Id. When a district court conditions voluntary dismissal on the payment of costs and fees, "defendants should only be awarded attorney fees for work which cannot be used in any future litigation of [their] claims." Koch v. Hankins, 8 F.3d 650, 652 (9th Cir. 1993).

To determine a reasonable attorneys' fee award, the lodestar method is the customary method. Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cty. of Nevada, 67 F.3d 248, 252 (9th Cir. 1995). The court may adjust the lodestar figure based on other considerations. Hensley v. Eckerhart, 461 U.S. 424, 434. The party seeking a fee award bears the burden of showing that the claimed rate and hours worked are reasonable. Jordan v. Multnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987).

**III. DISCUSSION**

This order addresses two motions.

The first is Lantah's motion for voluntary dismissal of its counterclaims. When this Court previously reviewed Telegram's motion for voluntary dismissal, it considered whether to condition the dismissal upon an award of attorneys' fees and costs to Lantah. Lantah's current motion presents the mirror image of that situation, as Telegram now asks the Court to condition dismissal of Lantah's counterclaims upon an award of attorneys' fees and costs to Telegram. The Court grants Lantah's motion to dismiss without prejudice on the condition that Lantah pay Telegram's reasonable attorneys' fees and costs.

The second is Lantah's motion for attorneys' fees and costs. Because the Court has already held that Lantah is entitled to an award, this Order only analyzes whether the requested fees and costs are reasonable. The Court substantially reduces Lantah's requested fee award.

**A. Lantah's Motion to Dismiss Counterclaims**

"When confronted with a motion for voluntary dismissal pursuant to Rule 41(a)(2), the Court must determine: (1) whether to allow dismissal; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed." Fraley, 2012 WL 893152, at *2.

The parties agree that this Court should dismiss Lantah's counterclaims. See Lantah's Mot. to Dismiss at 5; Opp'n to Mot. to Dismiss at 2. The parties also agree that the dismissal should be without prejudice. Id. The only question as to this motion is whether the Court should impose any terms as conditions for granting the dismissal.

**1. Terms and Conditions of Dismissal**

Telegram argues that this Court should grant Lantah's dismissal of its counterclaims without prejudice on the condition that Lantah pay Telegram's reasonable attorneys' fees and costs. Opp'n to Mot. to Dismiss at 2. Lantah argues that Telegram is not entitled to recover fees or costs. See Lantah's Mot. to Dismiss at 5.

a. **Attorneys' Fees and Costs**

Telegram requests reasonable attorneys' fees and costs as a condition of dismissing Lantah's counterclaims. Opp'n to Mot. to Dismiss at 2.

"Although costs are often awarded as a condition of dismissal without prejudice . . . the Ninth Circuit has stated that '[i]mposition of costs and fees as a condition for dismissing without prejudice is not mandatory.'" Williams, 227 F.R.D. at 540 (quoting Westlands, 100 F.3d at 97). "'In determining whether to award costs to a defendant after a voluntary dismissal without prejudice, courts generally consider the following factors: (1) any excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by a defendant in preparing for trial; (3) the extent to which the litigation has progressed; and (4) the plaintiff's diligence in moving to dismiss.'" Fraley, 2012 WL 893152, at *4 (quoting Williams, 227 F.R.D. at 540). The decision to award fees is even more discretionary. See Arteris S.A.S. v. Sonics, Inc., No. C 12-0434 SBA, 2013 WL 3052903, at *4 (N.D. Cal. June 17, 2013) (noting that "[t]he court's imposition of fees and costs is discretionary"); Co–Investor, AG v. Fonjax, Inc., No. C 08-1812

SBA, 2010 WL 1292767, at *3 (N.D. Cal. Mar. 31, 2010) (highlighting that "Rule 41(a)(2) exists chiefly for the defendant's protection" when deciding whether to award attorneys' fees).

The Court first addresses each of the four Williams factors and then turns to Lantah's arguments against an award of attorneys' fees and costs to Telegram.

**i. Any excessive and duplicative expense of second litigation**

This factor considers the costs that Telegram would face in any future litigation with Lantah. Telegram argues that it incurred fees when it defended itself against Lantah's counterclaims and that those fees would be duplicated in future litigation with Lantah. Opp'n to Mot to Dismiss at 3. As examples, Telegram notes that it incurred fees by answering Lantah's counterclaims and researching potential affirmative defenses. Id. When the Court analyzed this factor in connection with Telegram's motion for dismissal, it acknowledged that, although the litigation has not progressed very far, Lantah would still incur some duplicative costs in a second litigation. See Order Granting Telegram's Voluntary Dismissal at 8 (emphasis added). The same reasoning applies here; however, Telegram defended against counterclaims whereas Lantah defended against affirmative claims. Therefore, Telegram likely incurred fewer duplicative fees than Lantah. Because Telegram expended at least some resources and time to defend against Lantah's counterclaims, and that work would be duplicated in any future litigation, the first factor weighs in Telegram's favor.

**ii. Effort and expense incurred by Telegram in preparing for trial**

As discussed above, the Court has previously acknowledged that this litigation has not progressed very far. See Order Granting Telegram's Voluntary Dismissal at 8. Telegram, however, points to the effort and expense that it incurred when it prepared a "summary judgment brief directed in part to Lantah's counterclaims." Opp'n to Mot. to Dismiss at 3; See also Mot. for Summary Judgment (dkt. 43) at 20. Additionally, Telegram argues that it was in the process of drafting a reply that, in part, opposed Lantah's argument that the Court should enter summary judgment on Lantah's counterclaims. Opp'n to Mot. to Dismiss at 3. It is fair to conclude that Telegram incurred some effort and expense to respond to Lantah's counterclaims.

**iii. Extent to which litigation has progressed**

When analyzing this factor with respect to Lantah's fees, this Court acknowledged that "this litigation has not progressed to a meaningful extent toward trial and the parties have conducted very limited discovery." See Order Granting Telegram's Voluntary Dismissal at 8. This factor weighs neither for nor against Telegram.

**iv. Lantah's diligence in moving to dismiss**

In its order granting Telegram's motion for voluntary dismissal, the Court requested that Lantah advise the Court by September 14, 2020 of how it wished to proceed with its counterclaims. See Order Granting Telegram's Voluntary Dismissal at 10. Lantah moved to voluntarily dismiss its counterclaims on September 25, 2020. See generally Lantah's Mot. to Dismiss. Although Telegram argues that Lantah "did not necessarily move as expeditiously as possible," this factor weighs against Telegram. See Opp'n to Mot. to Dismiss at 3.

**v. Lantah's arguments**

Lantah argues that it should not be required to pay Telegram's attorneys' fees and costs. See Lantah's Mot. to Dismiss at 5–6.

First, Lantah "does not understand what rule or principle might support an award of attorney fees or costs for voluntary dismissal of those compulsory counterclaims." Id. at 5. The rule governing voluntary dismissals provides that a court may dismiss an action "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Rule 41(c) states that "[Rule 41] applies to a dismissal of any counterclaim . . ." Fed. R. Civ. P. 41(c). Although Telegram does not cite to a case where a court has imposed payment of attorneys' fees and costs as a condition upon a voluntary dismissal of counterclaims, Rule 41 suggests that courts have the discretion to do so. See generally Opp'n to Mot. to Dismiss; see also United States v. Ass'n of Behavior Consultants, No. 15-cv-01188-JCS, 2020 WL 32330, *5 (N.D. Cal. Jan. 2, 2020) (acknowledging that "the Court [could] condition a dismissal [of counterclaims] without prejudice on a payment of costs and fees").

Second, Lantah "does not understand what fees or costs Telegram might have incurred to defend those compulsory counterclaims" that were "asserted but otherwise not prosecuted."

United States District Court
Northern District of California

Lantah's Mot. to Dismiss at 5. In response, Telegram points to its work "answering Lantah's pleading allegations and researching potential affirmative defenses," preparing a summary judgment brief "directed in part to Lantah's counterclaims," and replying to Lantah's request that the Court "enter summary judgment for Lantah" on its counterclaims. See Opp'n to Mot. to Dismiss at 3. Telegram incurred at least some fees and costs to defend Lantah's compulsory counterclaims.

Finally, Lantah cautions that awarding Telegram fees and costs would "promote needless litigation" and "chill good faith 'intent to use' trademark applications." Lantah's Mot. to Dismiss at 5. This argument is not compelling. Lantah fails to show why awarding Telegram fees and costs would deter businesses or individuals from registering "intent to use" trademark applications.

**vi. Conclusion**

The Court has wide discretion to impose payment of Telegram's reasonable fees and costs as a condition of dismissal. See Arteris, 2013 WL 3052903, at *4. Considering the Williams factors discussed above, Telegram likely did incur some fees and costs to defend Lantah's counterclaims, but any award would likely be small. The Court holds that Telegram is entitled to recover fees and costs as a condition upon dismissal of Lantah's counterclaims. Telegram shall submit within 30 days of this order its records of fees and costs, along with a proposal of no more than ten pages. Lantah may then respond within 14 days with a competing proposal of no more than ten pages, and Telegram may file a reply of no more than five pages within seven days. See Order Granting Telegram's Voluntary Dismissal at 9. The parties are also welcome to proceed by way of stipulation.

**B. Lantah's Motion for Attorneys' Fees and Costs**

Lantah seeks $1,615,140 in fees and $6,737.35 in costs. See Fee Mot. at 12. Telegram argues that the Court should substantially reduce Lantah's requested award. See Opp'n to Fee Mot. at 2. The Court agrees.

"[A] defendant is entitled only to recover, as a condition of dismissal under [Rule] 41(a)(2), attorneys fees or costs for work which is not useful in continuing litigation between the

parties." Koch v. Hankins, 8 F.3d 650, 652 (9th Cir. 1993). Courts must "differentiat[e] between work product rendered useless and that which might be of use in [future litigation]." Id.

**1. Fees**

**a. Hourly Rate**

To show that the requested rates for counsel are reasonable, plaintiffs must "produc[e] satisfactory evidence that [they] are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." O'Brien v. FCA US LLC, No. 17-cv-04042-JCS, 2019 WL 5295066, at *5 (N.D. Cal. Oct. 18, 2019) (citing Jordan v. Mulnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987)). The relevant legal community is the forum district. Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992). Affidavits from comparably qualified practitioners in the same forum, decisions of other courts, and the Court's own experience are all appropriate guideposts for determining reasonable rates. O'Brien, 2019 WL 5295066, at *5.

Lantah requests an hourly rate of $900 for its counsel, Donald Thompson. See Fee Mot. at 12. Although Thompson's standard hourly rate is $600, Lantah argues that it should increase for two reasons. Id. at 11–12. First, Lantah contends that comparably experienced attorneys at the law firm representing Telegram bill at hourly rates of $900 or more. Id. at 12. Second, Lantah argues that $900 is an appropriate rate considering the novel issues in the case, high stakes involved, and the general quality of work performed. Id.

Lantah fails to satisfy its burden of establishing $900 as a reasonable hourly rate. Lantah provides two declarations to support its argument that attorneys from Telegram's counsel's firm bill at an hourly rate higher than $900. See generally Exh. 7, Fee Mot. at 78–85; Exh. 1, Reply re Fee Mot. at 8–19. First, neither of these declarations were filed in cases in this district. See generally Exh. 7, Fee Mot. at 78–85; Exh. 1, Reply re Fee Mot. at 8–19. Second, as Telegram notes, the declarations do not establish $900 as the "prevailing market rate" in the relevant legal community. See Opp'n to Fee Mot. at 10. Instead, the declarations provide the rate that the clients paid for representation in those cases. See generally Exh. 7, Fee Mot. at 78–85; Exh. 1, Reply re Fee Mot. at 8–19.

The Court reduces Lantah's requested hourly rate to $600. This is Thompson's standard

United States District Court
Northern District of California

hourly rate and it comports with that of attorneys in this district with similar experience. See, e.g., Sazerac Co., Inc. v. Fetzer Vineyards, Inc., No. 3:15-cv-4618-WHO, 2017 WL 6059271, at *11 (N.D. Cal. Dec. 7, 2017) (finding that $608 per hour is a reasonable rate for a trademark litigation attorney with 10 years of experience).

b. **Time**

Lantah seeks to recover fees for 1,843.4 hours of work[1]. See Reply re Fee Mot. at 6. "[A] defendant is entitled only to recover, as a condition of dismissal under [Rule] 41(a)(2), attorneys fees or costs for work which is not useful in continuing litigation between the parties." Koch, 8 F.3d at 652. Courts should exclude from a fee request any hours not "reasonably expended," including those that are "excessive, redundant, or otherwise unnecessary." Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "Ultimately, a 'reasonable' number of hours equals the number of hours which could reasonably have been billed to a private client." Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013) (internal quotation marks and alterations omitted). Telegram identifies multiple categories of hours that it argues should either be excluded or reduced for failure to meet this standard.

**i. Time billed during stay in case**

First, Telegram objects to the significant amount of time that Thompson billed while this case was stayed. Opp'n to Fee Mot. at 3. The Court stayed all discovery and dispositive motions in this case on November 15, 2019. See Minute Entry (dkt. 58). Nonetheless, between November 15, 2019 and June 9, 2020, the date on which Telegram filed its motion for voluntary dismissal of its claims, Thompson billed 382.1 hours. See Opp'n to Fee Mot. at 3; Fee Mot. at 34–42. Although some continued work during a stay is appropriate, the party seeking fees must explain why expending a "large amount of time during the stay in [a] case was reasonable." See Alzheimer's Inst. Of Am. v. Eli Lilly & Co., No. 10-cv-00482-EDL, 2016 WL 7732621, at *7 (N.D. Cal. Apr. 14, 2016). For the following reasons, the Court reduces the 382.1 hours that

---

[1] In Lantah's fee motion, Lantah requests 1,794.6 hours in fees. See Fee Mot. at 4. In Lantah's reply, Lantah modifies the requested amount to reflect the time Thompson billed in connection with the reply brief. See Reply re Fee Mot. at 6.

United States District Court
Northern District of California

Thompson recorded while this case was stayed.

Thompson billed a significant portion of the 382.1 hours on tasks related to the SEC Action against Telegram. See generally Fee Mot. at 34–42. Thompson recorded several time entries for reviewing the case docket in the SEC lawsuit. Id. On one day, Thompson billed 12.6 hours for reviewing the case docket and summarizing his findings on "cross-motions for summary judgment, statements of undisputed facts, supporting declarations and exhibits thereto" despite billing 4.5 hours for the same task the day before. Id. at 35. Thompson also recorded a significant amount of time for traveling to New York to observe a hearing in the SEC Action. Id. at 38. Lantah argues that Thompson "had to be" at the hearing because, depending on the outcome, Telegram could have "irrevocably [issued] its own cryptocurrency in seconds." See Reply re Fee Mot. at 3. But Lantah fails to explain how Thompson's physical presence at the hearing would have prevented or mitigated any harm to his client's case. Lantah also fails to adequately explain why spending a significant amount of time reviewing the SEC docket was reasonable during a stay.

Also during the stay, Thompson reported that he spent a substantial portion of time preparing a motion for a temporary restraining order that he never filed. See generally Fee Mot. at 34–42. Lantah argues that Thompson prepared the temporary restraining order so that Lantah would be ready to file it if Telegram "irrevocably issued its cryptocurrency without prior notice." Reply re Fee Mot. at 3. Telegram argues that Lantah's requested fees in connection with drafting the temporary restraining order are unreasonable because the motion would have likely failed, as the Court had already found that Telegram was likely to succeed on the merits of its claims. See Opp'n to Fee Mot. at 5; see also Order Granting Mot. for Prelim. Inj. at 10. Lantah fails to adequately explain why it was reasonable for Thompson to spend a significant amount of time preparing a temporary restraining order in anticipation of an event that ultimately did not occur.

For the foregoing reasons, the Court reduces the hours that Thompson billed during the stay from 382.1 to 38.2 hours[2]. See Alzheimer's Inst., 2016 WL 7732621, at *7 (reducing

[2] 382.1 x .90 = 343.9; 382.1 - 343.9 = 38.2 hours

requested fees by 90% because movant did not justify "expending such a large amount of time during the stay" in the case).

**ii. Excessive hours**

Telegram also identifies several tasks for which it argues Thompson billed excessive hours. Opp'n to Fee Mot. at 5–6. First, Thompson recorded 110.2 hours for preparing Lantah's 10-page reply brief in support of its motion for partial summary judgment. See generally Fee Mot. at 19–20. Although page length is not always a "reliable indicator of how much time reasonably was incurred in preparing [a filing]," 110.2 hours for a 10-page brief seems excessive. See Bobol v. HP Pavilion Mgmt., No. 04-CV-00082-JW, 2016 WL 927332, at *4 n.5 (N.D. Cal. Apr. 10, 2006) (finding that 11.75 hours billed for preparing a 5-page reply brief was reasonable). The Court reduces by 50% the time Thompson billed for Lantah's reply brief, from 110.2 hours to 55.1 hours[3]. See Sierra Club v. U.S. Env't Prot. Agency, 75 F. Supp. 3d 1125, 1151 (N.D. Cal. 2014) (reducing time spent on a 10-page summary judgment reply brief from 21.5 hours to 15 hours).

Second, Thompson recorded 165.1 hours for work in connection with Lantah's opposition to Telegram's motion to voluntarily dismiss its claims. See Fee Mot. at 7, 42–44. Lantah's opposition addressed various issues regarding dismissal and included two lengthy declarations with exhibits. See generally Opp'n to Telegram's Mot. to Dismiss. Although Thompson's opposition brief likely involved substantial research and preparation, 165.1 hours on one brief is unreasonable considering Thompson's experience. See Hernandez v. Grullense, No. 12-cv-03257-WHO, 2014 WL 1724356, at *13 (N.D. Cal. Apr. 30, 2014) (considering billing attorney's experience when determining a reasonable amount of time expended on a particular task). The Court reduces by 45% Thompson's recorded hours for work on Lantah's opposition brief from 165.1 hours to 90.8 hours[4].

Third, Thompson recorded 144.4 hours[5] for work in connection with Lantah's fee

[3] 110.2 x 0.50 = 55.1; 110.2 - 55.1 = 55.1 hours
[4] 165.1 x 0.45 = 74.3; 165.1 - 74.3 = 90.8 hours
[5] Thompson billed 100.6 hours for preparing Lantah's application for attorneys' fees and updated his time records to indicate an additional 43.8 hours spent on his reply brief. See Fee Mot. at 7; Reply re Fee Mot. at 5.

application. See Fee Mot. at 7, 44–46. The fee application was not particularly complicated because the Court previously established that Lantah was entitled to fees. See Order Granting Telegram's Voluntary Dismissal at 8. The Court also specifically addressed the parameters of Lantah's fee application and requested "records of fees and costs, along with a proposal of no more than ten pages" and permitted "a reply of no more than five pages." Id. at 9. Given the Court's prior order, it seems unreasonable that Thompson spent 144.4 hours on Lantah's fee motion. The Court finds that Thompson's time spent in connection with Lantah's fee motion is excessive and applies a 55% reduction, leaving 65 compensable hours[6]. See Cruz v. Starbucks Corp., No. C-10-01868-JCS, 2013 WL 2447862, at *10 (N.D. Cal. June 5, 2013) (applying a 50% reduction of fees requested for drafting fee motion); see also Dytch v. Lazy Dog Restaurants, LLC, No. 16-cv-03358-EDL, 2019 WL 3928752, at *7 (Aug. 16, 2019 N.D. Cal.) (reducing hours spent on fee motion from 94.6 to 60 hours).

Fourth, Thompson billed 60.2 hours for preparing Lantah's answer and counterclaims in response to Telegram's complaint. See Fee Mot. at 15–16. Although drafting an answer and counterclaims involves legal and factual research, 60.2 hours is unreasonable considering both Thompson's experience in trademark litigation and the length of the filing (12 pages and 5 exhibits). See Fee Mot. at 4; See generally Lantah's Answer and Counterclaims; Hernandez v. Grullense, 2014 WL 1724356, at *13. The Court reduces by 30% the hours that Thompson spent in connection with Lantah's answer and counterclaims, from 60.2 to 42.1 hours[7].

Lastly, Thompson billed 360.7 hours for his work in connection with Lantah's appeal of the preliminary injunction. See Fee Mot. at 24–29. Thompson billed 111.7 hours for the opening brief, 51.9 hours on the reply brief, 37.8 hours on work related to the oral argument, and 59.3 hours for Lantah's petition for rehearing en banc. Id. The Court previously recognized that Lantah expended resources in its appeal of the preliminary injunction and can recover these fees. See Order Granting Telegram's Voluntary Dismissal at 8. However, the Court finds that 360.7 hours is an excessive amount of time to spend on an unsuccessful appeal that Lantah elected to

[6] 144.4 x 0.55 = 79.4; 144.4 - 79.4 = 65 hours
[7] 60.2 x 0.30 = 18.1; 60.2 - 18.1 = 42.1 hours

United States District Court
Northern District of California

pursue. When determining whether hours were reasonably expended, the time must be "reasonable in relation to the success achieved." See Hensley v. Eckerhart, 461 U.S. at 434; McGinnis v. Kentucky Fried Chicken of Cal., 51 F.3d 805, 809–10 (9th Cir. 1994). The Court reduces by 30% the time that Thompson billed for his work on Lantah's appeal, from 360.7 hours to 252.5 hours[8].

**iii. Work that might be useful in future litigation**

Lantah may recover only fees and costs incurred for work that would not be useful in future litigation. See Koch, 8 F.3d at 652; Order Granting Telegram's Voluntary Dismissal at 9. Lantah argues that none of the work for which it seeks to recover will be useful in future litigation, primarily because Telegram has abandoned its rights to the GRAM mark. See Fee Mot. at 10; Reply re Fee Mot. at 6. Telegram contends that although it will no longer use the GRAM mark specifically in connection with cryptocurrency services, Telegram has not abandoned its rights in the mark entirely. See Opp'n to Fee Mot. at 7–8. Telegram argues that there "may be future litigation based on future activities either Telegram or Lantah conducts under the mark." Id.

In their briefing throughout this case, the parties primarily focused on the issue of whether Telegram's Purchase Agreements constituted a "use in commerce." See Order Granting Telegram's Voluntary Dismissal at 9; see also Order Granting Prelim. Inj. at 10. In light of the SEC Action, any future litigation would likely address whether Telegram's Purchase Agreements were a lawful use in commerce. See Order Granting Telegram's Voluntary Dismissal at 9. Lantah reports that Thompson spent time researching "unlawful use defenses." See, e.g., Fee Mot. at 31. This research relates to the issue of whether Telegram's Purchase Agreements were a lawful use in commerce. Because Lantah could use this research in future litigation that addresses the "lawful use in commerce" issue, the dismissal of this action does not render this work useless. For that reason, fees that arose from Thompson's "unlawful use" research are not recoverable here.

Telegram also argues that future litigation would likely involve the issue of Lantah's unclean hands defense. Opp'n to Fee Mot. at 8. Lantah does not respond to this argument. See

[8] 360.7 x 0.30 = 108.2; 360.7 - 108.2 = 252.5 hours

generally Reply re Fee Mot. Lantah cannot recover any recorded time spent on research related to that issue.

Thompson's use of block-billing, discussed below, prevents the Court from isolating the time that should be excluded.

**iv. Block-billing**

Telegram objects to Thompson's use of "block billing" in his time entries. Opp'n to Fee Mot. at 8. Thompson block-bills in approximately 65% of his time entries. See generally Fee Mot. at 15–46. Block billing is not per se unreasonable. See Fischer v. SJP-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000). However, courts may reduce fee awards when block billing makes it impossible to determine whether the time spent on each task was reasonable. See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007). Block billing is especially problematic in this case where the Court is tasked with identifying and excluding from the fee award time spent on work that would be useful in future litigation. See Koch, 8 F.3d at 652. Thompson's block-billing prevents the Court from doing so, because each time entry that includes unrecoverable work—such as research related to the unclean hands doctrine the "lawful use in commerce" issue—also includes recoverable work. For example, on November 6, 2019, Thompson billed 10.5 hours for the following: "Consider case management issues. Prepare joint case management statement. Communicate with opposing counsel re same. Perform related research concerning unclean hands and unlawful use defenses." Fee Mot. at 34. Some of this work—the research regarding the unclean hands and unlawful use defenses—is not recoverable. See Koch, 8 F.3d at 652. The work regarding case management is recoverable. Due to the block-billing in this particular entry, the Court cannot determine how many of the 10.5 hours are recoverable.

Thompson's block-billing also prevents the Court from determining whether the amount of time billed for particular tasks is reasonable. For example, Thompson includes the phrase "Communicate with D. Jeffrey" or "Conference with D. Jeffrey" in the description of almost every time entry. Because Thompson lists this discrete task among others in his time entries, the Court cannot determine the amount of time that Thompson spent conferring with his client and whether that amount is reasonable.

United States District Court
Northern District of California

Thompson uses block-billing in approximately 65% of his time entries. Because his block-billing prevents the Court from excluding from the fee award work that would be useful in future litigation and identifying unreasonable hours, the Court applies a 30% reduction[9] to the block-billed hours[10]. See Welch, 480 F.3d at 948 (accepting a report from the California State Bar's Committee on Mandatory Fee Arbitration which found that block-billing may increase time by 10% to 30%); see also Banas, 47 F. Supp. 3d at 968 (applying a 20% reduction to block-billed hours).

c. **Multiplier**

As Telegram notes in its opposition, it is unclear whether Lantah seeks a 50% enhancement on its requested lodestar figure or just on Thompson's hourly rate. See Opp'n to Fee Mot. at 11 n.12. Regardless, the Court finds that a multiplier is not warranted.

Because the lodestar amount is presumed to be reasonable, courts should use multipliers to adjust the lodestar amount upward or downward only in "rare and exceptional cases." See Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000). A case is "rare and exceptional" when the lodestar amount is unreasonably low or unreasonably high. Id. Although Lantah's efforts were not insignificant, the Court dismissed Telegram's claims when this lawsuit was "at a relatively early stage," and "ha[d] not progressed to a meaningful extent toward trial." See Order Granting Telegram's Voluntary Dismissal at 7–8. Lantah argues that this case involved "novel issues," high stakes, and complicated motions that Thompson had never prepared before. See Reply re Fee Mot. at 5. Lantah does not adequately demonstrate that these factors were not already subsumed in the lodestar calculation. See Blum v. Stenson, 465 U.S. 886, 898–901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination). Accordingly, the Court holds that Lantah is not entitled to a multiplier of its lodestar amount or Thompson's hourly rate.

---

[9] The maximum reduction is appropriate here where, as discussed above, several block-billed entries include both unrecoverable and recoverable time.

[10] The 30% reduction applies only to block-billed fees which the Court is not separately reducing for specific categories (i.e., Work during the stay, Reply brief, etc). See Banas v. Volcano Corp., 47 F. Supp. 3d 957, 968 n.14 (N.D. Cal. 2014).

United States District Court
Northern District of California

d. **Conclusion**

In conclusion, the Court modifies Lantah's fee request as follows:

| Time Category | Requested Hours | Reduction | Awarded Hours |
|---|---|---|---|
| Work During Stay | 382.1 | 90% | 38.2 |
| Reply Brief (MSJ) | 110.2 | 50% | 55.1 |
| Opposition to Telegram's Voluntary Motion to Dismiss | 165.1 | 45% | 90.8 |
| Fee Motion | 144.4 | 55% | 65 |
| Answer to Complaint and Counterclaims | 60.2 | 30% | 42.1 |
| Appeal of Preliminary Injunction | 360.7 | 30% | 252.5 |
| Block Billed Hours | 446.7 | 30% | 312.7 |
| Other | 174 | 0% | 174 |
| **TOTAL** | | | 1030.4 |

| Awarded Hours | Hourly Rate | Total Fees |
|---|---|---|
| 1030.4 | $600 | $618,240 |

**2. Costs**

Lantah seeks $6,737.35 in costs and Telegram does not object. Fee Mot. at 87; see also Opp'n to Fee Mot. at 11. The Court awards Lantah $6,737.35 in costs.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Lantah's Motion for Voluntary Dismissal without prejudice on the condition that Telegram is awarded reasonable attorneys' fees and costs, to be determined by additional briefing as outlined above. The Court also GRANTS in part Lantah's Motion for Attorneys' Fees and Costs and awards Lantah $618,240 in fees and $6,737.35 in costs.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: November 2, 2020



CHARLES R. BREYER
United States District Judge